Well, next here, I think it's pronounced Zee v. Attorney General. Good morning, Your Honors. May it please the Court, I'm Alan Strauss for Petitioner Macon Shee. That's how I pronounce it anyway. Counsel, would you like to reserve some time for rebuttal? Oh, I'm sorry, yes, five minutes. Granted. In this case, the Board of Immigration Appeals reviewed an immigration judge's findings of fact and did its own factual findings, which is prescribed by regulation. The Board is not allowed to engage in fact-finding. It can only review an immigration judge's findings of fact for clear error. Although it is also allowed to review legal questions or questions of discretion or judgment under a de novo standard. Can I ask you a question right off the bat? Yes. I notice there's a lot of reliance put on the profile, the 2004 profile. What facts did the BIA get wrong, aside from what was in that 2004 profile? Did the BIA get any other quote-unquote facts wrong? Well, as far as the decision about whether it is a well-founded fear, I think the Board looked at the facts and looked at them in a way that it felt they should be interpreted. The profile says things such as that the State Department is not aware of any... Well, I understand that. If we could stick away from that for a minute, things dealing with the report. Are the facts specific to your client? Did the BIA get any of those facts wrong? Well, there's one fact. When you go to the question of discretion, the Board found that Ms. Shee had lied during her immigration hearing because it claimed that she had never been arrested and convicted of a crime. We don't really know if that's true or not because that was never addressed in the immigration hearing. What we do know is that it's not considered a crime in New York law. It's not classified as a crime. It never came out in front of the immigration judge because no one asked, and he wasn't concerned about it or she wasn't concerned about it, whether she actually believed or not that she had been convicted of a crime. Can we agree that most of this case deals with an interpretation of that 2004 profile? Well, it does, except that's not what I see as the question. The facts deal with that and how those would be interpreted, but the real issue is does the BIA have the authority to look at those facts and draw its own conclusions about the ultimate fact of whether she has a well-founded fear of persecution or whether it can only look to that as whether the immigration judge committed clear error in finding that? My question is we've got an immigration judge and a BIA who look at this 2004 profile and see it differently. Now, true, the BIA can't generally find facts, but they can actually section, I guess, 4 of 8 CFR 1003.1D3. It does allow them to do fact-finding with respect to official reports, which I think this 2004 profile is. Aren't they entitled to look at this on their own and make findings? I'll read you the sentence if you want. Except for taking administrative notice of commonly known facts, such as current events or the contents of official documents, the board will not engage in fact-finding in the course of deciding appeals. I just wonder what the effect of that sentence is here. I think the official documents that they're referring to would be something such as a criminal conviction. The courts have all cautioned about using State Department reports as a sole means for deciding whether a case is, you know, whether a fact is true or not. True, but the IJ and the BIA both relied on it. And I think the question that you're raising is should the IJ's view of that report be credited and deferred to as opposed to what the BIA had to say about it? Well, that's what I'm arguing, that the board really can review her findings for clear error. I think in this case what they're talking about, they might be talking about criminal convictions or statutes, you know, an official statute that they would get, say, from the Chinese government, that they could read and they could take that as an official document. And remember when they talk about current events or contents of official documents, they're using that. I think that's in a sui generis sort of style that they're the same. They should have the same indices of reliability. And, you know, a statute would be absolutely reliable. A statute would say what it says. But the State Department report is much less reliable. Let me ask you a question, Counselor. The IJ found that your client had a well-founded fear of persecution due to the likelihood of forced sterilization, correct? The BIA didn't find support for that in the record. Where in the record is that claim supported? Well, the record says that they no longer, in the State Department report, that they believe there's no longer due and forcible sterilizations. But they don't say for sure that they are. They use anecdotal records. Well, but that's his argument, though. I mean, where in the record do you have factual support for the proposition that your client was likely to be sterilized upon her return to China? No, it's in the asylum profile that when they talk about – in the asylum profile it talks about coercion, family planning coercive technique. Are you relying exclusively on the asylum profile? No, there's also a report. The State Department report talked about, I forgot, 13 million tubal ligations in one year. I cited it in the brief, but I don't remember what page it's on. But they talked about that there were 13 – I believe it said 13 million tubal ligations in one year. And it had dropped to a certain amount. But they were still doing tubal ligations. Well, I think they also pointed out that no one knows how many of those were voluntary. That's right. So that would mean it's at least permissible to draw an inference that not all of them are voluntary. And that goes right to the clear error standard, which says if there are two permissible interpretations, the immigration judge's finding cannot be clearly erroneous. That's the crux of your argument, that this is plausible, and that's all you need is plausibility. That's right. Counsel, let me put this in a different context to see if we can – I can quite understand the argument you're making. You want – an appellate court must give deference to the fact-finding of a trial court. Here the immigration judge is the trial court. I believe what you're arguing – analogous would be the bankruptcy court. Bankruptcy court decides a certain issue. It's appealed to the district court, and it's a fact-finding issue. And then it's appealed to the circuit court. And the circuit court in that case is almost shoving the district court out properly because the circuit court should decide not if the district court exercised its discretion reasonably to look at the facts, but it's going back to review what the trial court did. And I think that's what you're asking us here to do is to say put the board aside. We are now evaluating the fact findings of the immigration judge. But only to determine whether the board applied the proper standard of review, and that's whether it applied the clearly erroneous standard. Okay, but here's – I see our time is up. Let me put this in this term. If the facts are in a document that is the same document that was looked at by the immigration judge and the board itself, without oral testimony or anything else,  Remember, the question is those are only part of the facts. What the board found was that these did not rise to the level of a well-founded fear of persecution on account of the birth control policy. And that is what the board – the board is supposed to determine whether that ultimate fact is clearly erroneous. In Anderson v. City of Bessemer, if the court wants they can subtract this from my rebuttal. In Anderson v. City of Bessemer, the Supreme Court said it can't look at the district – I mean the Court of Appeals version of the facts. It had to go back to look at the district court to look at what – at the district court's findings to determine whether they were clearly erroneous to determine whether the Fourth Circuit erred or not when it reviewed for clear error. And that's the same thing I'm asking the court to do here. Okay. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the court, my name is David Shore. I represent the Attorney General in this matter. In this asylum case, the petitioner originally claimed that she feared persecution on account of her involvement in the 1989 student movement and persecution on account of her religion. She disavowed that? Yes, Your Honor. And the IJ accepted her disavowal? Yes. After persisting that claim for about seven to eight years, she ultimately disavowed it and instead set forth this new claim based on the births of her children in the United States and her alleged fear, of course, of family planning practices in China. She had a full and fair opportunity to present her claims before an asylum officer, before the immigration judge, and the board considered her claims on two separate occasions. The board ultimately issued a final order of removal on May 18, 07, denying her claim for lack of merit and in addition in the exercise of discretion. Both are separately dispositive of her asylum claim. The only decision that this court looks at in reviewing the final order of removal, or that is the only agency order before this court, is the board's May 18, 2007 order of removal. The board neither summarily affirmed the immigration judge's decision nor adopted the immigration judge's findings and instead went the other way and vacated the immigration judge's decision. And this court's jurisprudence is clear that in this circumstance, the sole decision before the court is the board's decision. The IJ's decision is a dead letter. Well, let me ask you. In an appropriate case, let's say we all agree that BIA totally blew it in terms of the standard it used. We have no ability to go back and say, hey, BIA, do your job. I mean, it seems to me that the government asked in this very case for the case to be remanded so that BIA could do it right. Now you're saying something different? No, Your Honor. No, I'm not saying something different. And the court has reviewed the board's application of a standard of review as a question of law. And I'll certainly address that. The issues before this court are whether substantial evidence supports the board's denial of asylum, and which the petitioner doesn't endeavor to argue. And, in fact, has abandoned any claim that the evidence compels the conclusion that she possesses a well-founded fear and instead states that the record evidence, that is the asylum profile, contains, in the words of the petitioner's counsel, contradictory information. Well, I mean, are we correct? Judge Garbus asked an excellent question, I thought. We're all sort of going off of the same, we're all dealing with this 2004 profile. The IJ is reading it one way, the BIA is reading it another. And, frankly, I did a little research on the BIA apparently always reads it this way. There are a lot of cases out there where they found no well-founded fear of persecution based on this. But, in any event, in this particular case, what kind of deference is owed? I mean, and perhaps you heard my question before about is this, can this be fact-finding and is that okay? Can we just go that way? The board has always reserved for itself the ultimate question, that is, is the alleged fear well-founded? That's a legal conclusion. The board terms that as a mixed question or a matter of judgment or the application of law to fact. This court's jurisdiction is circumscribed by the INA. And this court reviews findings of fact under the substantial evidence standard. And this court has been clear, as has every other court that has considered the issue, that the determination of a well-founded fear for purposes of judicial review, as opposed to the agency's review, is reviewed for substantial evidence. Yeah, but let's talk about the key fact, though. The key fact is the IJ made a factual finding that she was likely to be sterilized. Why is that not plausible? Your Honor, that was the immigration judge's ultimate conclusion. That's a fact-finding. That's not a legal conclusion. That's a fact. That is a classic fact made by a district judge, an immigration judge every day of the week. I find, as a matter of fact, that you will be likely to be sterilized. What right did the BIA have to find that clearly erroneous? Well, the board, as indicated in matter of ASB, which I advised this court of after briefing completed, which was recently decided, and I do want to advise the court, by the way, that the compendium case of matter of ASB, which is matter of VK, which applies the same reasoning as ASB, which is the board reviews de novo the ultimate fact-finding, that is now pending before this court, and that's docket number 082571. I just wanted this court to be aware of that fact. But the board, as the agency in charge with interpreting and applying the Immigration and Nationality Act, has always reserved for itself the ultimate question, that is, is the fear well-founded? Let me ask my question again. I'm not sure you heard it. The immigration judge made a finding of fact that this woman was likely to be sterilized if she is removed to China. Okay? The BIA reviews that for clear error. Clear error means a firm conviction that an error was made. Where in the record can you point to us evidence to show that we should have a firm conviction that error was made and that that BIA's finding of clearly erroneous was apt? Well, Your Honor, my response is that the board does not review that determination for clear error. The board reviews that ultimate determination de novo. That is not ñ maybe we just have to agree to disagree, but when you say things like ultimate determination, I assume that you're talking about whether she has a well-founded fear of persecution. Yes. And that's not what I'm talking about. I'm talking about the predicate factual finding. Forget about what her fear is. There may be a person out there who says, I'm going to be sterilized, but I don't care. Right? She gets shipped back to China. She does not have a well-founded fear of persecution because she doesn't care. Let's focus on the sterilization. This woman says, I'm afraid I'm going to be sterilized. I believe I'm going to be sterilized. There's evidence in the record to support that. There's other record evidence that doesn't. But the IJ finds that credible and says, that's my finding of fact. How does the BIA properly find that clearly erroneous? What the board cited as the clear error in the immigration judge's decision were the fact that the immigration judge didn't mention and ignored the fact that the petitioner's husband is a naturalized citizen of Canada, which according to the profile, the profile indicates that overseas Chinese, which are individuals with residency rights in third countries, may receive special treatment. And the board found that it was clear error that the immigration judge totally bypassed that fact. So shouldn't that have been remanded then for the IJ to take into consideration the Canadian citizenship of the husband? In this case, the board determined that further fact finding as to discrete facts, which the board reviews for clear error, the board determined that that wasn't necessary. An example of a discrete fact that the board would review under the clearly erroneous standard would be, for example, if someone says, I was struck three times by an official of my country. Now, the board would review it. If the IJ finds that the testimony is credible, the board would review that under the clearly erroneous standard. Now, whether or not being struck three times constitutes past persecution, for example, the board would review that de novo. In this case, the discrete factual findings that the board found clearly erroneous were that the first one that I mentioned, that is there was no mention of the residency rights of petitioner's husband, which may mean that there's special treatment for petitioner's family. And in addition, the board also found clearly erroneous the immigration judge's finding that petitioner may face high fines or social compensation fees, as they're called, upon her return because the report indicates that the level of fines vary. And the board also noted contradictory evidence or evidence that didn't support the immigration judge's decision within that State Department profile. That is that U.S. diplomats are not aware of a single case of a returnee from the United States facing a coerced sterilization. And the profile states that there's no known national policy regarding returnees with U.S.-born children. And it indicates that the evidence suggests that individuals, that various individuals can evade birth control regulations in Guangdong, which is petitioner's province. And also the report does state that local Guangdong physicians have reported to United States consular officers that they have seen no signs of coerced sterilization since the 1980s. So the board had this report before, just like the immigration judge did. The board is, under its interpretation of the INA, the board, and as it has historically done, it made a de novo determination that based on this evidence, this document, which is in the record, this document is undisputed, petitioner failed to carry her burden. And because substantial evidence supports that determination, the court should deny the petition for review. The court should also deny the petition for review because the board properly exercised its discretion. An asylum applicant bears the burden of establishing that he or she merits a favorable exercise of discretion, in addition to proving the merits of their case. Here the board found the petitioner failed to carry that burden. She admittedly filed a false asylum application in 1994, alleging involvement in the student movement of 1989, and alleging a detention of one week, and then stating, I believe, that she wasn't allowed to return home for three weeks. She repeated that claim over seven years later, in 2002, at her asylum interview. And she didn't, actually, at one of her initial removal proceedings, her attorneys stated that, her prior attorney stated that she had verified that the information in her application is, quote, essentially correct. And then ultimately, at her merits hearing, on cross-examination, she then recants and says, oh, the part about the religion was true, but the part about the student movement, oh, that was concocted. Counsel, can I swing back for a minute because I'm just a little bit unclear? If the IJ and the BIA substantially relied on the same document, does the BIA need to, or how do we handle that in terms of deference? Need the BIA defer to the IJ's determination based on a piece of paper? Now, your adversary pointed to a Supreme Court case in an admittedly different context, but should we have to defer to it? It's there in writing for everyone. Your Honor, the court in matter of ASB addressed that issue and said that the immigration, it can consider other portions of a document that the immigration judge relied upon, and it can draw its conclusions in doing so. In this case, as in any case, the board reviews the discrete findings, the discrete factual findings under the clearly erroneous standard. Now, to the extent the immigration judge made discrete findings based on that report rather than findings regarding the likelihood of future mistreatment, the board would review those under the clearly erroneous standard. But here we have the document and we have the immigration judge's, really the immigration judge's determination, and there's very little in the way of, because this case only involves the possibility of future mistreatment, there's very little in the way of these discrete findings of fact, and much of it just goes to the ultimate determination, which, again, the board reviews under the de novo standard. I don't know if that answers the question. But in addition, turning to the board's exercise of discretion, the board, as the regulations set forth explicitly, the board exercises its discretion de novo in determining whether or not an individual merits asylum. The board made a de novo determination that petitioner failed to show she merited asylum in light of the false application, false testimony, and in addition, she was asked cross-examination at her removal proceeding. She was asked, have you ever been arrested or convicted of a crime? Her answer was no, when the fact was that she was arrested for trademark counterfeiting, which is, in fact, a crime. And she happened to- Well, I thought your adversary said that it's not actually categorized as a crime under New York law. That would be what the offense that she ultimately pled guilty to or was cited for, which is disorderly conduct. But she was arrested for a crime. And the board weighed those factors against the fact that she's been in the United States for 12 years and that she has four United States citizen children. And it determined, ultimately considering the totality of the factors, that a favorable exercise of discretion was not warranted. Now, petitioner has not argued before the agency that she didn't think it was a crime. She never set forth that intention on appeal to the board when DHS argued that a favorable exercise of discretion was not warranted. She never offered any explanation for the reason why she didn't disclose her criminal history before the agency. And although she may disagree with the agency's exercise of discretion, that doesn't render it manifestly contrary to law, which is the standard, the applicable standard of review. So how can we be sure that that discretion was exercised independent of the disagreement about the likelihood of sterilization? Your Honor, the board has said that one factor in the exercise of discretion is the possibility of persecution. Here the board determined that petitioner failed to show a well-founded fear. So that would be a consideration relevant to the board's ultimate discretionary determination. But the board considered, as it stated, the positive equities and her false asylum application, false testimony, failure to disclose her arrest, and it considered those factors and ultimately determined that a favorable exercise of discretion was not warranted. Thank you, counsel. Thank you, Your Honor. In the city of Bessemer, the Supreme Court was reviewing a case in which a woman claimed that she had been discriminated against. The Supreme Court said that the finding that she had been discriminated against, based on all the facts and evidence, was a factual finding. The same as based on the evidence of well-founded fear of persecution this court has held is a factual finding. The court says expressly that, and I'll quote it, whether an asylum applicant has demonstrated past persecution or well-founded fear of future persecution is a factual question. And that's a quote from Mulanga V. Ashcroft, which is cited in the brief. In matter of ASB, the board said that it essentially is not a factual finding. Therefore, it can use the de novo standard of review. And it based that on two analogies. The first one was an analogy to cancellation or removal, in which a person has to show that a relative will suffer exceptional, extremely unusual hardship if that person is removed. And it said because we have to review de novo, whether there's exceptional, extremely unusual hardship, we can also review well-founded fear de novo. But this court and every court in the United States, every circuit court in this country has held that the hardship determination is a discretionary determination. So, of course, because the regulation says that the BIA has the authority to review discretion de novo, it does have the authority to review hardship. But because a well-founded fear is not a discretionary judgment, the board must use the clear errors test. And the other analogy that the board made in matter of ASB to support its decision was that it can review exercises of discretion de novo. Well, that's explicitly provided for in the regulation. So the board seems to be saying we'll look at subparagraph 2 to overrule subparagraph 4. And it just can't do that. It just is totally contrary to the regulation. Now, one thing I just want to point out, the court, the board seems to, I mean, the government seems to be asking this court to allow the board to review the factual finding de novo, which would be a legal finding. But it's asking this court to use the substantial evidence standard, which is, in other words, it's asking this court to say whether or not the findings are the factual, to use the factual findings standard, whereas the board is allowed to use the de novo standard, a legal standard, to do the same thing. As far as Ms. Chee's arrest, she didn't talk about it because no one asked her about it. You can see from the record that nobody asked her about why she said what she said. And she does not speak English, and she did not speak English then. What if we agree with your argument that the factual finding regarding likelihood of sterilization was improperly reviewed de novo by the BIA? What about your adversary's argument that they still win because of the independent reason that the BIA, in exercising its discretion, found all of these other factors that were properly viewed in a negative light toward your client? Well, remember, those are also based on findings that, factual findings that the BIA made. Well, you don't disagree, do you, with the fact that she gave different stories, she first said it was? No. I mean, she shifted gears, right? Yes, she did. But the immigration judge believed her when she said she didn't speak English and she didn't know what was written in the applications and she just did what she was told. So the immigration judge made that factual finding. And as far as the crime, as I said, she may very well have believed that it wasn't a crime because it's not classified as a crime in New York. But those were factual findings that the board based its decision on, as well as the well-founded fear. So they were of a peace with the sterilization issue? Yes. Thank you, counsel. Thank you very much. I thank both counsel for excellent briefing and oral argument in this case.